Exhibit H

Construction Management Agreement

This Construction Management Agreement (this "Agreement") is made as of the 13th day of May, 2015 by and between **Empire Outlet Builders LLC**, having offices at 150 Myrtle Avenue, Brooklyn, New York 11201 (hereinafter referred to as the "Contractor") and **LPCiminelli, Inc.**, having offices at 1250 Broadway, New York, New York 11201 (hereinafter referred to as the "Manager").

Recitals

A. The Contractor has entered into a contract with St. George Outlet Development, LLC (the "Owner") with respect to the construction of the Empire Outlets of Staten Island to be located at 55B Richmond Terrace, Staten Island, NY 10301, which project will consist of approximately 1.1 million square feet of retail space including 100 shops and a 3-story, 500,000 square foot concrete parking structure (which project is hereinafter referred to as the "Project").

B. The Manager is in the business of performing, among other things, construction management services.

C. The Contractor is desirous of engaging the Manager to perform construction management services for the Contractor with respect to the Project.

D. The parties are desirous of setting forth their agreement as to such matters.

**NOW, THEREFORE,** in consideration of the covenants and agreements set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Agreement to Act as a Manager.** The Contractor hereby engages the Manager to perform construction management services for the Contractor with respect to the Project in accordance with this Agreement, and the Manager hereby agrees to perform such services for the Contractor. Manager shall perform its services consistent with the skill and care ordinarily provided by construction managers practicing in the same or similar locality under the same or similar circumstances or the same/similar type project. Manager shall perform its services as expeditiously as is consistent with such skill and care and the orderly progress of the Project.

2. **Term.** This Agreement becomes effective and commences immediately upon Contractor issuing to Manager a notice to proceed with its services hereunder and, unless sooner terminated pursuant to the provisions of this Agreement, terminates upon (i) Substantial Completion (as such term is defined in Section 9.8.1 of the Owner Agreement General Conditions) of the Project, (ii) Contractor's receipt of all necessary approvals and sign-offs by governmental and/or quasi-governmental regulatory authorities and agencies, (iii) Contractor's receipt of all required warranties and close-out documentation from Contractor's subcontractors and suppliers as applicable, (iv) Contractor's ability to allow tenants to use or occupy the Project site and allow tenant fit-out to commence at the Project site, and (v) the remediation of all punch-list items (included on a punch-list prepared by the Contractor and Architect) to the satisfaction of the Contractor and the Architect. In the event that the Contractor does not issue a notice to proceed to the Manager within fourteen (14) business days from the date hereof, unless such time

1

period is extended by the mutual agreement of the parties, the Manager shall be entitled to terminate this Agreement by written notice to the Contractor after such fourteen (14) business day period (or any such extension thereof) if provided prior to Contractor's issuance of such notice to proceed. In the event of any such termination, neither party shall have any further rights or obligations hereunder.

        3.     **Scope of Services.** The scope of the services to be performed by the Manager for the Contractor shall include, but not be limited to, the following:

    (a)    construction coordination, management and scheduling; All construction schedules, created and maintained by Manager, shall be created using Primavera P6 (or a comparable scheduling program agreed to by both parties) and shall be appropriately cost loaded showing actual costs for activities in progress and estimates for uncompleted tasks;

    (b)    constructability review;

    (c)    cost estimating;

    (d)    allocation of construction activities among prospective subcontractors including drafting scopes of work and bid packages with respect to the Work for Contractor's review and approval;

    (e)    coordination and management of bidding among prospective subcontractors and suppliers of the Contractor including bid procedures as to which the Manager shall use its best reasonable efforts to promote competition among prospective bidders taking into account the schedule for the Substantial Completion of the Project;

    (f)    recommendations as to the award of subcontracts and purchase orders and drafting the same for Contractor's review and approval;

    (g)    coordination and management of site activities;

    (h)    coordination and management of all shop drawings and submittals;

    (i)    coordination and management of all construction related activities at the site among the Contractor and its subcontractors and suppliers;

    (j)    coordination and management of all payment applications from the subcontractors and suppliers of the Contractor and submission of Contractor's applications for payment to the Architect and Owner;

    (k)    otherwise performing management services for the Contractor with respect to the Project;

    (l)    assist the Contractor in obtaining information regarding applicable requirements for equal employment opportunity programs, and other programs as may be required by governmental and/or quasi-governmental authorities and agencies;

(m) draft scopes for subcontractors and suppliers of the Contractor for purposes of including the entire scope of Work as set forth in the final Drawings and Specifications to be performed by the Contractor with respect to the Project to subcontractors and suppliers inclusive of all scopes that may potentially be self-performed by the Contractor;

(n) value engineering; and

(o) preparation of reports and supporting documentation for submission to governmental and/or quasi-governmental authorities and agencies.

In addition to the services generally described above, the Manager shall provide (i) all the services required to be performed by a construction manager for an owner as set forth in the Standard Form of Agreement between Owner and Construction Manager as Adviser (AIA Document C132 – 2009 Edition, hereinafter referred to as the "C132 Standard Form"), which such services are incorporated herein by reference, but that such services shall be performed by the Manager on behalf of the Contractor (as opposed to on behalf of the Owner) as set forth in this Agreement; and (ii) all the services required to be performed by a construction manager for an owner as set forth in the General Conditions of the Contract for Construction, Construction Manager as Adviser (AIA Document A232 – 2009 Edition, hereinafter referred to as the "A232 Standard Form"), which such services are incorporated herein by reference, but that such services shall be performed by the Manager on behalf of the Contractor (as opposed to on behalf of the Owner) as set forth in this Agreement. In the event of any conflict between this Agreement and the C132 Standard Form and/or the A232 Standard Form (including, without limitation, such services to be provided by Manager under the C132 Standard Form and/or the A232 Standard Form), the terms and provisions of this Agreement shall govern and control. In addition, the parties hereby acknowledge and agree that such services to be provided by Manager under the C132 Standard Form and/or the A232 Standard Form shall be superseded by any revisions, additions or supplements to such services contained in this Agreement.

Additionally, the parties acknowledge that Contractor has entered into an agreement (in the Standard Form of Agreement between Owner and Contractor (AIA Document A101-2007 Edition) as modified by Owner and Contractor) with the Owner to construct the Project (the "Owner Agreement"). The Owner Agreement and the general conditions thereto (General Conditions of the Contract for Construction (AIA Document A201–2007 Edition) as modified by Owner and Contractor) of the Owner Agreement (the "Owner Agreement General Conditions") are attached hereto as **Exhibit "C"** with pricing and other information that is not necessary for the Manager to perform its services hereunder having been redacted by the Contractor. In performing its services hereunder, the parties mutually acknowledge and agree that the services of the Manager hereunder and as set forth in the C132 Standard Form and the A232 Standard Form are to be performed in the context of the performance of management services for Contractor and, in particular, as follows:

(i) the Manager shall manage and assist the Contractor in the Contractor's fulfillment of the Scope of Work set forth in Exhibit B to the Owner Agreement, including, but not limited to, Items 1 through 33, inclusive, as set forth in such Exhibit commencing on Page 1 thereof and concluding on page 4 thereof; and

(ii) the Manager shall help effectuate and be primarily responsible for fulfilling the requirements of Items A-O, inclusive, as set forth in the said Exhibit B to the Owner Agreement.

3

With reference to the foregoing Items A-O, inclusive, of Exhibit B to the Owner Agreement, the parties mutually acknowledge that requirements that the Manager "assure, ensure, or insure" as to a matter requiring performance of the Work by the Contractor and/or subcontractors of the Contractor shall mean managing, advising, monitoring compliance and notifying the Contractor of any failure of performance observed by the Manager with the parties acknowledging and agreeing that performance of the Work shall remain the responsibility of the Contractor and its subcontractors.

Except as otherwise provided in this Agreement, the parties also mutually acknowledge and agree that this Agreement and the services of the Manager hereunder do not modify or affect the obligations of the Contractor under the Owner Agreement notwithstanding the references herein to the C132 Standard Form and the A232 Standard Form. Manager's services hereunder are for the purpose of advising and managing all the obligations of the Contractor in the Owner Agreement and the Owner Agreement General Conditions and any other obligations of the Manager as set forth in this Agreement with the Manager required to fulfill the aforesaid obligations set forth in Items A-O, inclusive of Exhibit B to the Owner Agreement. In the performance of its services hereunder, the Manager shall have interaction with the Owner and the Architect all in coordination with the Contractor and with copies of all pertinent communications copied to the Contractor, but such interaction will be for purposes of assisting the Contractor in fulfilling its obligations to the Owner. The Contractor shall be entitled to limit any and all direct communication between the Manager with the Owner and Architect. References in the C132 Standard Form and the A232 Standard Form as well as in Items A-O, inclusive of Exhibit B to the Owner Agreement requiring the Manager to make submissions to and obtain approvals from the Owner and Architect shall be deemed to mean making submissions to the Owner and Architect in coordination with and on behalf of the Contractor and also obtaining approval from the Contractor in addition to the Owner. Any such submission to the Owner and/or Architect shall only be made upon the prior written approval of the Contractor. In the event of any conflict between this Agreement and the Owner Agreement and/or the Owner Agreement General Conditions, the terms and provisions of this Agreement shall govern and control, but only for purposes of governing the relationship between the Contractor and Manager with the parties mutually acknowledging that the services hereunder are for the purpose of managing and fulfilling the Contractor's obligations under the Owner Agreement.

The parties further acknowledge and agree that, subject to the terms and conditions of this Agreement, all of the terms and conditions set forth in the C132 Standard Form and the A232 Standard Form shall be applicable to the Manager's performance of its services hereunder including, but not limited to, the following terms and conditions:

(a) §3.3.12.3 and § 3.3.12.4 pertaining to certifications of Applications for Payment to be made by the Manager with respect to the Work;

(b) §3.3.13 with respect to matters pertaining to safety;

(c) §3.3.14 with respect to determining in general whether the Work is being performed in accordance with the Contract Documents applicable thereto and the authority and limitations of that authority it being understood that the Manager shall have no authority to reject Work that has been performed unless the Contractor agrees thereto;

(d) §3.3.15 with respect to the authority and limitations of authority to act with the parties ackn0owledging that the Manager shall have no authority to act on behalf of the Owner or Architect unless such authority is set forth in the Owner Agreement;

(e) §6.2 with respect to the fact that the Manager does not have control over the cost of labor, materials or equipment or the methods of determining bid prices, or over competitive bidding, market, or negotiating conditions and that, accordingly, Manager cannot and does not warrant or represent that bids or negotiated prices will not vary from budgets, proposed, established or approved by the Owner, Contractor or from any cost estimate or evaluation prepared by the Manage;

(f) §8.1.4 with respect to consequential damages and as set forth in Section 9(f) of this Agreement; and

(g) §11.7.3 with respect to withholding payment from the Manager, except with respect to the "at-risk" portion of the Fee as set forth in **Exhibit "B"**, being the portion of the Fee equal to 12.50% of the Fee, which may be withheld by the Contractor to the extent of a claim made by the Contractor against the Manager that has not, as yet, been resolved.

4. **Notification to the Owner. Architect and other Persons**. The Contractor shall notify the Owner, the Architect, the Contractor's consultants and subcontractors, and all prospective consultants and subcontractors and all other interested persons or entities of the Contractor's engagement of the Manager pursuant to this Agreement. The parties shall mutually coordinate all of the Contractor's activities with such parties under the Owner Agreement and this Agreement. Without limiting the foregoing, the Contractor shall specifically incorporate in its subcontracts with its subcontractors that each of such subcontractors shall comply with the procedures set forth in the C132 Standard Form and the A232 Standard Form in terms of performing their respective subcontracts and that the Manager shall perform management and administration of the work to be performed under such subcontracts.

5. **Insurance**. The Manager shall maintain the insurance coverage as set forth in **Exhibit "D"** attached hereto.

6. **M/W/LBE Requirements**. Manager shall monitor compliance of the M/W/LBE requirements for the Project with the Utilization Plan prepared by Bradford Construction (dated November 2014) and attached hereto as **Exhibit "E"**, and shall use Manager's best reasonable efforts toward Contractor achieving and having its subcontractors achieve the goals provided thereunder, provide all necessary reports required thereunder, and notify the Contractor if there are any deficiencies and recommend action to be taken by the Contractor with respect thereto.

7. **Reservation of Rights**. Contractor reserves the right to perform construction and operations related to the Project with the Contractor's own forces, and to award contracts in connection with the Project. The Manager shall notify the Contractor if any such independent action will interfere with the Manager's ability to perform the Manager's responsibilities under this Agreement.

8. **Copyrights and Licenses**. Manager and Manager's consultants, if any, shall not own or claim a copyright in the Instruments of Service (as such term is defined in the Owner Agreement). The Manager, Manager's consultants, if any, and the Contractor warrant that in transmitting Instruments of Service, or any other information, the transmitting party is the

copyright owner of such information or has permission from the copyright owner to transmit such information for its use on the Project. If the Contractor and Manager intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions. The parties mutually acknowledge and agree that, by reason of this Section 8, Article 7 of the C132 Standard Form shall be of no force or effect.

### 9. Claims and Disputes; Indemnification.

(a) Contractor and Manager shall commence all claims and causes of action, whether in contract, tort, or otherwise, against the other arising out of or related to this Agreement in accordance with the requirements of the method of binding dispute resolution set forth in Section 10 of this Agreement within the period specified by applicable law, but in any case not more than ten (10) years after the date of Substantial Completion of the Work; provided, however, that such limitations period shall not be applicable with respect to claims and causes of action for indemnification and contribution arising out of or pertaining to the claims and causes of action of third parties.

(b) To the extent damages are covered by property insurance, Contractor and Manager waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, except such rights as they may have to the proceeds of such insurance. Contractor or Manager, as appropriate, shall require of the contractors, consultants, agents and employees of any of them similar waivers in favor of the other parties enumerated herein.

(c) Manager shall indemnify, defend (upon the indemnified party's request with counsel reasonably acceptable to the indemnified party) and hold harmless the Owner, Contractor, Contractor's representatives and the additional insureds set forth in **Exhibit "D"** attached hereto, and their respective officers, directors, shareholders, members, partners, agents and employees and successors and assigns, from and against damages, losses and judgments, liabilities, penalties, costs and expenses arising from claims by third parties, including reasonable attorneys' fees and expenses recoverable under applicable law, but only to the extent they are caused by the breach or default of Manager under this Agreement, or the negligence, willful misconduct, acts, errors or omissions of the Manager, its employees, its consultants or anyone for whose acts they may be liable in the performance of the work and services under this Agreement. Manager's indemnity obligations hereunder shall survive the expiration or termination of this Agreement. Such indemnity obligations shall not be construed to negate, abridge or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Section. Manager's duty to indemnify the Contractor under this provision shall not be limited to the available proceeds of insurance coverage.

(d) Contractor and Manager shall indemnify and hold the other harmless from and against any losses, expenses or damages which result from the negligence or willful misconduct of the other party.

(e) In the event the Manager incurs reasonable legal or professional fees in the process of pursuing or defending a claim from a subcontractor retained by Contractor in relation to non-payment, the Contractor will indemnify and hold harmless the Manager from and against such claim, provided that such non-payment is not due to the fault of Manager.

6

(f) Manager and Contractor waive consequential damages for claims, disputes or other matters in question arising out of or relating to this Agreement including, without limitation, to all consequential damages due to either party's termination of this Agreement. Nothing contained in this Section 9(f) shall be deemed to preclude an award of actual or direct damages as provided by applicable law.

The parties mutually acknowledge and agree that, by reason of this Section 9, Section 8.1 of Article 8 of the C132 Standard Form shall be of no force or effect.

10. **Dispute Resolution.** Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to good faith discussions and negotiations among the parties. If the parties do not resolve such a claim, dispute or other matter through good faith discussions and negotiations within two (2) business days, then such dispute shall be subject to expedited mediation which shall be held in New York County. A request for expedited mediation shall be made in writing, delivered to the other party to the Agreement, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of a complaint or other appropriate demand for binding dispute resolution but, in such event, expedited mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending expedited mediation for a period of thirty (30) days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. The parties shall share the mediator's fee and any filing fees equally. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof. If the parties do not resolve such a claim, dispute or other matter through expedited mediation within thirty (30) days, then any such claim, dispute or other matter shall be resolved through litigation in New York State Supreme Court, County of New York which may be commenced by either party. The parties mutually acknowledge and agree that, by reason of this Section 10, Section 8.2 and Section 8.3 of Article 8 of the C132 Standard Form shall be of no force or effect.

11. **Contractor to enter into all Subcontracts and other Agreements and Issue Purchase Orders.** The parties mutually acknowledge and agree that the Contractor shall enter into all Subcontracts and other agreements with third parties for purposes of performing its agreements and obligations to the Owner under the Owner Agreement. The Manager shall coordinate and manage all such matters with the Contractor pursuant to this Agreement and make recommendations with respect thereto as set forth in this Agreement. The parties mutually acknowledge and agree that the final determination with respect to each of the foregoing shall be that of the Contractor.

12. **Manager's Personnel; Out-Of Pocket Disbursements and Fee.** For the services set forth in this Agreement, the Contractor agrees to pay the Manager the following:

(a) The Contractor shall pay the Manager for the actual time worked by the Manager's personnel (subject to periodic audit by the Contractor from time to time upon written request) with respect to the Project (the "Personnel Charges") at the hourly rates set forth in **Exhibit "A"** annexed hereto and made a part hereof and shall reimburse the Manager for any out-of-pocket costs (e.g., printing costs, job trailer costs, etc.) incurred by the Manager that had been previously authorized by the Contractor in writing (including by way of e-mail) (which costs are hereinafter referred to as the "Authorized Costs"). The Manager shall render monthly statements to the Contractor with respect to the Personnel Charges and Authorized Costs during each calendar month. Such statements shall be rendered by the fifth (5th) day of each month for the

services performed during the previous month. Such statements shall be due and payable within forty-five (45) days.

(b) If the services covered by this Agreement have not been completed by August 1, 2017, through no fault of the Manager, then Manager shall be compensated for its services and additional staffing costs beyond that date together with any continuing Authorized Costs then being incurred by the Manager. Otherwise, the Manager shall not be compensated for its services and additional staffing costs and Manager shall be responsible for paying for its additional staffing costs and any consequential costs that Manager incurs with respect to such additional staffing and any continuing Authorized Costs that are incurred subsequent to August 1, 2017.

(c) Manager agrees that at least through the end of 2015, Christopher DeRose, Manager's General Superintendent, will exclusively work on the Project. Manager will also employ a superintendent level employee, in addition to Christopher DeRose, who will also be exclusively dedicated to the Project so that if Mr. DeRose is reassigned, continuity of field activity execution may be maintained on the Project.

(d) The key personnel of Manager assigned to the Project shall not be replaced without at least fifteen (15) days' prior written notice to Contractor and the prior written consent of the Contractor with such written consent not to be unreasonably withheld, delayed or conditioned. If any key staff person shall leave Manager's employ or become incapacitated or be removed from the Project, then Manager shall, within seventy-two (72) hours, designate a substitute person who is reasonably acceptable to Contractor. If the Contractor shall become dissatisfied with any employee of Manager assigned to the Project, Manager shall substitute for such employee another person as determined by Manager but who is reasonably acceptable to Contractor.

(e) The following expenses of Manager shall not be reimbursed: travel of any kind (unless requested by the Contractor), hotel expenses, meals, bonuses, cell Phones, courier charges, classes, all overhead expenses (including accounting, public relations, corporate, human resources, legal, information technology, project accounting), project controls, risk management, safety, sales, communications, operations, overhead general conditions (e.g., home office expenses), and vacation/sick/holiday/paid time off (collectively "PTO") but only to the extent that costs for PTO are not already included in either the salary multiplier or the hourly rate, Pensions, Severance, Safety Incentives and promotions.

(f) In addition to the foregoing, the Contractor shall pay the Manager a fee (the "Fee") as set forth in **Exhibit "B"** annexed hereto and made a part hereof. The Fee shall be payable as follows:

(i) the non-"at-risk" portion of the Fee shall be payable in installments based on the percentage of completion of the Project (e.g., if 10% of the value of the Work was completed based on approved applications for payment, the Manager would be entitled to 10% of the non-at-risk portion of the Fee) and shall be included as part of the Manager's monthly applications for payment to the Contractor and the same shall be payable as set forth herein;

(ii) to the extent that the Manager achieves a Performance Metric and Milestone and/or earns an Additional Incentive as set forth in **Exhibit "B"**, the Manager shall be entitled to include the amount payable with respect thereto in Manager's monthly applications

for payment to the Contractor and the same shall be payable as set forth herein with the parties acknowledging that the amount payable with respect to a milestone that has not been achieved may still be payable in accordance with the terms of **Exhibit "B"** and if the same thereafter becomes payable, the same shall be included for payment in Manager's monthly applications of payment; and

        (iii)    the remaining Additional Incentives as set forth in **Exhibit "B"** shall be determined after the Project is 100% complete with all claims settled as set forth in **Exhibit "B"**.

    (g)    As part of its services, and as set forth in this Agreement and the C132 Standard Form and A232 Standard Form, Manager shall coordinate and manage all applications for payment from subcontractors of the Contractor and coordinate and manage all applications for payment to be made by the Contractor to the Owner under the Owner Agreement. As part of such process, Manager shall obtain and provide all documentation requested by any lender to the Owner, any government agency and any entity providing funding or financing to the Project for the timely processing of each monthly requisition. To the extent that subcontractors or suppliers of the Contractor fail to provide any requested or required documentation to the Manager, Manager shall report the same to the Contractor and provide the Manager's recommendations with respect thereto.

    **13.**    **Independent Contractor.** The parties mutually acknowledge and agree that the Manager is an independent contractor and is not an employee or agent of the Contractor. Neither the Manager nor any person engaged by the Manager as support staff shall be entitled to any benefits provided by the Contractor to its employees by agreement or by operation of laws applicable to its employees (e.g., health benefits, vacation, sick pay, etc.). Nothing contained in this Agreement shall be deemed or construed to make the parties partners or joint venturers.

    **14.**    **Suspension.**

    A.    If the Contractor fails to make payments to the Manager in accordance with this Agreement without legal justification for such non-payment, such failure shall be considered substantial nonperformance and cause for termination or, at the Manager's option, cause for suspension of performance of services under this Agreement. If the Manager elects to suspend services, the Manager shall give ten (10) days' written notice to the Contractor before suspending services. In the event of a suspension of services, the Manager shall have no liability to the Contractor for delay or damage caused the Contractor because of such suspension of services. Before resuming services, the Manager shall be paid all sums due prior to suspension and any expenses incurred in the interruption and resumption of the Manager's services. The Manager's compensation for the remaining services and the time schedules shall be equitably adjusted.

    B.    If the Project is suspended by the Owner and, as a result thereof, the Contractor suspends the performance of the Manager's services under this Agreement, the Manager shall be compensated for services performed prior to receipt of Owner's notice of such suspension. When the Project is resumed, the Manager shall be compensated for expenses incurred in the interruption and resumption of the Manager's services. The Manager's compensation for the remaining services and the time schedules shall be equitably adjusted.

    C. If the services of the Manager have been suspended for more than ninety (90) cumulative days for reasons other than the fault of the Manager, the Manager may terminate this Agreement by giving not less than ten (10) days' written notice.

    D. In the event of any termination by the Manager hereunder based on non-payment by the Contractor without legal justification for such non-payment, the Manager shall be entitled to be paid the same amounts as are payable to the Manager for a termination without cause as set forth in Section 15 of this Agreement together with such other damages as may be provided by applicable law.

    E. The parties mutually acknowledge and agree that, by reason of this Section 14, Sections 9.1, 9.2 and 9.3 of Article 9 of the C132 Standard Form shall be of no force or effect.

  **15.** **Termination Without Cause.**  Contractor shall be entitled to terminate this Agreement for the Contractor's convenience and without cause upon ten (10) business days' written notice to the Manager; provided, however, that the Contractor shall have no right to terminate this Agreement without cause any time after February 1, 2017. Shall the Contractor terminate the Manager without cause, the Contractor shall be required to pay to the Manager upon termination the following:

    (i) all Personnel Charges and Authorized Costs through the effective date of termination;

    (ii) the non-"at risk" portion of the Fee prorated through the last day of the month in which the termination occurs; and

    (iii) an additional termination fee equal to the sum of $1,236,875, being twenty-five percent (25%) of the Fee of $4,947,500 set forth in **Exhibit "B"**.

The parties mutually acknowledge and agree that the termination fee is for purposes of compensating the Manager for various matters incident to a termination for convenience including, but not limited to, lost business opportunities and any negative publicity incident to any such termination for convenience.

The parties mutually acknowledge and agree that, by reason of this Section 15, Sections 9.5, 9.6, and 9.7 of Article 9 of the C132 Standard Form shall be of no force or effect.

  **16.** **Termination With Cause.**

    A. Notwithstanding any other provision hereof, each party may terminate this Agreement at any time for cause. As used herein, the term "cause" shall mean a material breach of this Agreement which is not cured within ten (10) days following notice of such breach and a demand that it be cured within such period; provided, however, that in the event that such breach cannot be reasonably cured within such ten (10) day period, the party receiving any such notice shall not be deemed in breach if such party commences to cure such breach within such ten (10) day period and diligently proceeds to cure the same.

    B. In the event of any breach by a party, the other party shall have such rights and remedies against the breaching party as provided by applicable law.

    C. In the event of any termination by the Manager hereunder based on non-payment by the Contractor without legal justification for such non-payment, the Manager shall be entitled to be paid the same amounts as are payable to the Manager for a termination without cause as set forth in Section 15 of this Agreement together with such other damages as may be provided by applicable law.

    D. The parties mutually acknowledge and agree that, by reason of this Section 15, Section 9.4 of Article 9 of the C132 Standard Form shall be of no force or effect.

    **17.** **Notices.** Any notice required or desired to be given under this Agreement shall be deemed given if in writing and delivered personally or by certified mail, return receipt requested, or by reputable overnight courier service for next business day delivery with signature required, to the Contractor's president or manager (in the case of notice by the Manager to the Contractor) or to Manager to the attention of its president (in the case of notice from the Contractor to the Manager). All notices shall be deemed effective when received. Rejection or other refusal to accept or inability to deliver because of changed address of which notice was not given as required herein shall be deemed to be receipt of the notice. All notices shall be sent to the addresses set forth at the head of this Agreement or to such other addresses as may be designated by the parties from time to time by notice to the other parties.

    **18.** **Assignment.** The Manager acknowledges that the services to be rendered by the Manager are unique and personal, and are personally provided to the Contractor. Accordingly, neither party shall have the right to assign its interest in this Agreement without the prior written consent of the other party. Any such assignment by a party without the prior written consent of the other party shall be void and of no force or effect. Notwithstanding the foregoing, Contractor may assign this Agreement to the Contractor's lenders, the City of New York, or the Contractor's partners (including, without limitation, the Owner), in a mutually agreed upon form.

    **19.** **Miscellaneous.**

    (a) This Agreement shall be governed by the laws of the State of New York, without giving effect to conflicts of laws rules or principles thereof. In connection with any suit or action arising out of or related to this Agreement and brought by a party to this Agreement against the other, all reasonable costs and expenses, including reasonable attorney's fees and court costs, incurred by the prevailing party in such suit or action, shall be paid by the non-prevailing party to the prevailing party not later than thirty (30) days after written demand therefor (which shall include reasonable supporting documentation).

    (b) Contractor and Manager, respectively, bind themselves, their agents, successors, assigns and legal representatives to this Agreement.

    (c) If Contractor requests Manager to execute certificates, the proposed language of such certificates shall be submitted to the Manager for review at least fourteen (14) days prior to the requested dates of execution. If Contractor requests Manager to execute consents reasonably required to facilitate assignment to a lender, Manager shall execute all such consents that are consistent with this Agreement, provided the proposed consent is submitted to Manager for review at least fourteen (14) days prior to execution. Manager shall not be required to execute certificates or consents that would require knowledge, services or responsibilities beyond the scope of this Agreement.

(d)     Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Contractor or Manager.

(e)     Manager shall, upon the prior written consent of Contractor, be permitted to include photographic or artistic representations of the design of the Project among Manager's promotional and professional materials. The Manager shall be given reasonable access to the completed Project to make such representations. However, Manager's materials shall not include Contractor's or the Owner's confidential or proprietary information if the Contractor or Owner has previously advised Manager in writing of the specific information considered by Contractor or Owner to be confidential or proprietary.

(f)     If Manager or Contractor receives information specifically designated by the other party as "confidential" or "business proprietary," the receiving party shall keep such information strictly confidential and shall not disclose it to any other person except to (1) its employees and attorneys, (2) those who need to know the content of such information in order to perform services or construction solely and exclusively for the Project, or (3) its consultants and contractors whose contracts include similar restrictions on the use of confidential information, or (4) comply with laws or court order.

(g)     Every provision of this Agreement is intended to be severable. The invalidity or unenforceability of any particular provision of this Agreement in any jurisdiction will not affect the other provisions hereof, and this Agreement shall be construed in all respects as if that invalid or unenforceable provision were omitted.

(h)     This Agreement is binding upon the parties hereto and their respective successors, executors, administrators, legal representatives, heirs and legal assigns and inures to the benefit of the parties hereto and, except as otherwise provided herein, their respective successors, executors, administrators, legal representatives, heirs and legal assigns.

(i)     No waiver of any provision hereof by any party may be deemed a waiver by any other party of any other matter nor may any such waiver by any party be deemed a continuing waiver of any matter.

(j)     This Agreement may be executed in two (2) or more counterparts, each of which constitutes as original and all of which, when taken together, constitutes an Agreement.

(k)     Electric portable document format ("PDF") signature versions of this Agreement shall be deemed to have the same legal binding effect as original signature versions of this Agreement and shall be treated in all manner and respects as the original document. In the event that the parties exchange electronic PDF signature versions of this Agreement, the parties shall promptly thereafter exchange counterparts of this Agreement with original signatures.

(l)     Manager hereby agrees to execute and Manager shall be bound by the Staten Island Outlets Project Labor Agreement (the "PLA", attached hereto as **Exhibit "F"**), by and between Contractor and the Building and Construction Trades Council of Greater New York. To the extent that Manager learns of any deficiencies with respect to compliance with the PLA, Manager shall immediately report any deficiencies to the Contractor and recommend action with respect thereto.

(m)   As used herein, the masculine shall include the feminine and the neuter and the neuter and the masculine shall include the feminine as the context shall require. The singular shall include the plural and plural shall include the singular as the context shall require.

**20.   Further Assurances.** Each party shall perform such acts and execute and deliver such documents as are reasonably required to perform this Agreement.

**21.   Superseding Agreement.**   This Agreement supersedes the Memorandum of Agreement entered into by Contractor and Manager on May 5, 2015 and this Agreement may be superseded by a new agreement between the parties with respect to the subject matter set forth herein provided that any such superseding agreement is mutually acceptable to each party and is duly executed and delivered.

**22.   Entire Agreement; Modifications.** This Agreement contains the entire understanding of the parties.  There are no warranties representations, covenants or agreements between the parties except as otherwise set forth herein.  This Agreement may only be changed by an agreement in writing signed by each of the parties.

**[Remainder of Page Left Blank; Signature Page Follows]**

**IN WITNESS WHEREOF**, the parties have executed this agreement as of the day and year first above written.

Contractor:

**Empire Outlet Builders LLC**

By: _____
Donald Capoccia
Member
Its Duly Authorized Representative

Manager:

**LPCiminelli, Inc.**

By: _____
Louis P. Ciminelli
President
Its Duly Authorized Representative

14