UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
MARLINE SALVAT,

      Plaintiff,      Case No.: 17-cv-04002-VEC

  -against-

CONSTRUCTION RESOURCES CORP.,
EMPIRE OUTLET BUILDERS, LLC,
L.P. CIMINELLI, INC., and ANTHONY SANGO,

      Defendants.

---------------------------------------------------------------- X

**DEFENDANT L.P. CIMINELLI, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

BABCHIK & YOUNG, LLP
Attorneys for Defendant- L.P. Ciminelli, Inc.
245 Main Street
White Plains, New York 10601
(914) 470-0001

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ..........................................................................................2

STATEMENT OF FACTS ...................................................................................................2

PROCEDURAL HISTORY..................................................................................................5

STANDARD OF REVIEW ..................................................................................................8

ARGUMENT......................................................................................................................10

      POINT I

      PLAINTIFF FAILS TO STATE A CLAIM OF DISCRIMINATION OR
      RETALIATION AGAINST CIMINELLI UNDER ANY APPLICABLE
      LAW AND/OR STATUTE ......................................................................................10

      A.    No Employee-Employer Relationship Exists Between Plaintiff
            and Ciminelli..................................................................................................10

      B.    Even if Deemed a Joint Employer, Ciminelli Cannot Be Liable
            For Discriminatory Conduct ..........................................................................13

CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal, 556 U.S. 662 at 678 (2009)............................................................................9

AT&T v N.L.R.B., 67 F3d 446, 451 [2d Cir 1995], as clarified on reh (Sept. 29, 1995) ..........12

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ....8, 9

Brown v Daikin Am. Inc., 756 F3d 219, 225 (2d Cir 2014).........................................................8

Caldwell v. ServiceMaster Corp., 966 F.Supp. 33, 46 (D.D.C.1997) .......................................13

Clinton's Ditch Coop. Co. v. N.L.R.B., 778 F.2d 132, 138 (2d Cir.1985),
    cert. denied 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986) ...................................12

Evans v. N.Y. Botanical Garden, 2002 U.S. Dist. LEXIS 16434, 2002 WL 31002814,
    at 4 (S.D.N.Y. Sept. 4, 2002) .........................................................................................9

Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006)..........9

Gore v RBA Group, Inc., 03-CV-9442 (KMK) JCF, 2008 WL 857530,
    at *3 (SDNY Mar. 31, 2008).........................................................................................12

Gulino v. New York State Educ. Dep't, 460 F.3d 361, 370 (2d Cir.2006) ...........................10, 11

Harris v NYU Langone Med. Ctr., 12 CIV. 0454 RA JLC, 2013 WL 3487032,
    at *11 [SDNY 2013].................................................................................................10, 11

Hedges v. Town of Madison, 456 F. App'x 22, 23 (2d Cir. 2012) ...............................................9

Krasner v. Episcopal Diocese of Long Island, 374 F.Supp.2d 306 (EDNY 2005) ....................11

Lima v Addeco, 634 F Supp 2d 394, 399 (SDNY 2009)..................................................10, 11, 13

Lindner v. Int'l Bus. Machs. Corp., 2008 U.S. Dist. LEXIS 47599, 2008 WL 2461934,
    at n.1 (S.D.N.Y. June 18, 2008) .....................................................................................9

Macer v. Bertucci's Corp., 2013 U.S. Dist. LEXIS 170367 (E.D.N.Y. Dec. 3, 2013) .................9

Neal v. Manpower Int'l., No. 00 Civ. 277(LAC), 2001 WL 1923127,
    at **9–10 (N.D.Fla. Sept. 17, 2001) .............................................................................13

Nelson v. Beechwood Org., No. 03 Civ. 4441(GEL), 2004 WL 2978278
   at *3 (S.D.N.Y. Dec. 21, 2004) ...............................................................................................11

Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,
   595 F.3d 86, 91 (2d Cir. 2010) ................................................................................................8

Platform Learning, Inc., 375 Fed Appx 54 (2d Cir 2010) ......................................................10, 13

Riddle v. Citigroup, No. 13 CIV. 6833 AKH, 2014 WL 2767180, at 1 (S.D.N.Y. 2014) ...........9

Shamilov v Human Resources Admin., 10 CIV. 8745 PKC, 2011 WL 6085550,
   at *5 (SDNY 2011) ................................................................................................................10

Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005) .......................9

Sunnen v. New York, No. 10 Civ. 372(PKC), 2010 WL 3912728, at *1 (S.D.N.Y. 2010) .......10

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002) ............................................................8

Watson v. Adecco Empl. Servs., Inc., 252 F.Supp.2d 1347, 1356–57 (M.D.Fla.2003).............13

## **Statutes**

42 U.S.C. § 2000e–2(a)(1) ............................................................................................................10

42 U.S.C. § 2000e–3(a) ................................................................................................................10

Fed. R. Civ. P. 12(b)(6) ............................................................................................................2, 8

New York City Human Rights Law ........................................................................................2, 11

Title VII of the Civil Rights Act of 1964 ....................................................................2, 10, 11, 13

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of the motion by defendant, L.P. CIMINELLI, INC. (hereinafter "Ciminelli"), seeking an Order dismissing plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). As set forth in detail below, plaintiff purports to assert claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as codified ("Title VII") and the New York City Human Rights Law ("NYCHRL"), alleging that Ciminelli discriminated and/or retaliated against her because of her sex. More specifically, plaintiff claims that she was sexually harassed by a coworker, Angelo Sango, and was terminated in retaliation for her complaints about same.

However, as described in detail below, plaintiff fails to set forth a *prima facie* case against Ciminelli based on any of these statutes because: (i) plaintiff was not employed by Ciminelli, (ii) Ciminelli is not a joint employer, and (iii) there are no allegations in the Complaint that anyone from Ciminelli engaged in sexually harassing conduct towards plaintiff. In any event, even if Ciminelli were deemed a joint employer, upon learning of the alleged sexual harassment, Ciminelli did what it could as neither plaintiff nor plaintiff's harasser, Defendant Sango, were employees of Ciminelli. Accordingly, for the reasons set forth herein, it is respectfully submitted that plaintiff's Amended Complaint must be dismissed in its entirety as against Ciminelli.

## STATEMENT OF THE FACTS

In this action, plaintiff, a former employee of one of the subcontractors hired to work on the construction of Empire Outlets of Staten Island, located at 55B Richmond Terrace Staten Island, NY 10301 (hereinafter "the project'), alleges she was sexually harassed by another worker on the site, Angelo Sango, and was retaliated against for her complaints about same.

On or about May 13, 2015, Cimnelli entered into a Construction Management Agreement (hereinafter "CM Agreement") with Defendant, Empire Outlet Builders, LLC ("EOB"), to perform construction management services for the construction of Empire Outlets. (See Construction Management Agreement annexed hereto as **Exhibit H**) The project consisted of approximately 1.1 million square feet of retail space including 100 shops and a 3-story, 500,000 square foot concrete parking structure. **Exhibit H**

Pursuant to the CM Agreement, Ciminelli's "Scope of Services" included the following:

> "…construction coordination, management and scheduling…constructability review; cost estimating; allocation of construction activities among prospective subcontractors including drafting scopes of work and bid packages with respect to the work for [EOB's] review and approval; coordination and management of bidding among prospective subcontractors and suppliers of [EOB] including bid procedures…recommendations as to the award of subcontracts and purchase orders and drafting the same for [EOB's] review and approval; coordination and management of site activities; coordination and management of all shop drawings and submittals; coordination and management of all construction related activities at the site among [EOB] and its subcontractors and suppliers; coordination and management of all payment applications from the subcontractors and suppliers of [EOB] and submission of [EOB's] applications for payment to the Architect and Owner; otherwise performing management services for [EOB] with respect to the Project; assist [EOB] in obtaining information regarding applicable requirements for equal employment opportunity programs, and other programs as may be required by governmental and/or quasi-governmental authorities and agencies; draft scopes for subcontractors and suppliers of [EOB] for purposes of including the entire scope of work as set forth in the final drawings and specifications to be performed by [EOB] with respect to the Project to subcontractors and suppliers inclusive of all scopes that may potentially be self-performed by [EOB]; value engineering; and preparation of reports and supporting documents for submission to governmental and/or quasi-governmental authorities and agencies."

(**Exhibit H**) Notably, Ciminelli was not responsible for the hiring, firing, and/or disciplining of the subcontractors' employees. Nor was Ciminelli responsible for providing the subcontractors' employees with compensation for their work on the project.

On or about May 12, 2016, CRC entered into a Subcontractor Agreement (hereinafter "the Subcontractor Agreement") with EOB to provide labor and materials for the construction of the

3

project. See Exhibit B to Plaintiff's Amended Complaint annexed hereto as **Exhibit A**. Significantly, the Subcontractor Agreement incorporated the prior CM Agreement between Ciminelli and EOB stating in pertinent part that Ciminelli would provide "management, supervision, coordination, scheduling, and other services for [EOB] with respect to the Project in accordance with the provisions of the CM Agreement." See Exhibit B to Plaintiff's Amended Complaint annexed hereto as **Exhibit A**.

Notably, pursuant to the Subcontractor Agreement, all materials required for the performance of the work, including without limitation, cleaning equipment (e.g. brooms, shovels, PPE) and tools, as well as all disposal containers" were provided by EOB. See pg. 2 at paragraph 2(b) of Exhibit B to Plaintiff's Amended Complaint annexed hereto as **Exhibit A**. Additionally, pursuant to the Subcontractor's Agreement, EOB was to "pay [CRC] for all material and labor provided pursuant hereto on a Time and Material Basis" and agreed to various hourly labor rates. See pg. 2 at paragraph 4 of Exhibit B to Plaintiff's Amended Complaint annexed hereto as **Exhibit A**. Likewise, as set forth in the Subcontractor Agreement, CRC was to invoice EOB on a weekly basis for all amounts then owed pursuant to the terms of the agreement.

Also, despite plaintiff's claims to the contrary, EOB not Ciminelli was responsible for the subcontractors' safety and welfare on a daily basis. In that regard, pursuant to pg. 3 paragraph 6 of the Subcontractor Agreement entitled "Contractor's Obligations; Safety:" EOB was required to "comply with all site or owner requirements, OSHA requirements and applicable laws, ordinances, rules, regulations, and orders of public authorities for the safety of persons and property." See pg. 3 at paragraph 6(b) of Exhibit B to Plaintiff's Amended Complaint annexed hereto as **Exhibit A**. Furthermore, EOB agreed that all areas where CRC's work was to be performed, was to be maintained by EOB in accordance with safe practices and would be free of

any hazardous materials. Id.  In addition, EOB was required to provide adequate lighting in all areas where the work was to be performed to enable safe access to and egress from every place at the project site where CRC's employees/laborers were required to perform work under the Agreement.  See pg. 4 at paragraph 6(c) of Exhibit B to Plaintiff's Amended Complaint annexed hereto as **Exhibit A**.

## PROCEDURAL HISTORY

On or about January 26, 2017, plaintiff filed a complaint with the EEOC, charging Defendants, Construction Resources Corp. (hereinafter "CRC"), Empire Outlet Builders, LLC (hereinafter "EOB"), as well as Ciminelli with unlawful discriminatory practice relating to employment based on her sex. (**Exhibit B**).  Notably, however, in her EEOC complaint plaintiff failed to set forth a single allegation of discrimination and/or retaliation by Ciminelli.  Indeed a review of the EEOC complaint reveals that: (i) plaintiff was employed by CRC, (ii) she was assigned to work at CRC's construction site located at Empire Outlets 55B Richmond Terrace Staten Island, New York 10301, which was owned by defendant EOB, (iii) plaintiff was subjected to "blatant, open, and egregious acts of sexual harassment" by defendant Anthony Sango, [who is not an employee of Ciminelli], (iv) she complained to Greg Bullock, a Shop Steward, who is also not an employee of Ciminelli, (v) a meeting was held between plaintiff, representatives from her union, and CRC to discuss the purported sexual harassment, (vi) as a result of the meeting, CRC promised to permanently remove Sango from the job site, however, CRC reneged on its agreement, and instead (vii) CRC terminated plaintiff in retaliation for her complaints of unlawful sexual harassment. (**Exhibit B**)

In her EEOC complaint, plaintiff also made various allegations with respect to the inadequate bathroom conditions at the construction site. In that regard, plaintiff alleged that, (i) she repeatedly <u>complained to CRC</u> about her inadequate bathroom conditions, (ii) initially, <u>CRC failed to provide her with a separate bathroom</u>, (iii) <u>CRC instructed</u> plaintiff to use the bathroom located at the Staten Island Ferry, which was approximately five minutes away from the job site, (iv) plaintiff <u>met with representatives from her union and CRC</u> regarding plaintiff's complaints about the inadequate bathroom conditions, and (v) as a result of the meeting, <u>CRC promised</u> to provide plaintiff with safe and secure bathroom facilities. (**Exhibit B**)

In advance of filing her complaint with the EEOC, on December 9, 2016, plaintiff commenced an action in the Supreme Court of the State of New York, New York County under Index No. 160374/16 against defendants <u>CRC and Anthony Sango</u>. (**Exhibit C**)

<u>Over one (1) month later</u>, on January 25, 2017, plaintiff filed an Amended Summons and Complaint adding EOB and Ciminelli as defendants. (**Exhibit D**)

On April 7, 2017, as a result of the plaintiff already commencing an action in State court, the EEOC issued her a "Notice of Right to Sue." (**Exhibit E**).

Following plaintiff's receipt of the EEOC's "Right to Sue" letter, the parties agreed to allow plaintiff to consolidate all her claims—state and federal—in a single venue in federal court. Accordingly, the parties executed a stipulation to dismiss plaintiff's action from state court, without prejudice, and, several days later, on or about May 26, 2017, plaintiff filed the instant Summons and Complaint in the U.S. District Court for the Southern District of New York (hereinafter the "SDNY Complaint"). (**Exhibit F**) However, again, plaintiff's SDNY Complaint failed to include any facts to support a claim that Ciminelli discriminated and/or retaliated against her on account of her sex. Rather, in an attempt to cloud the issue and set forth a *prima facie* case

6

of discrimination and/or retaliation, plaintiff included generalized allegations that were in direct contradiction to her prior EEOC complaint.

For example, in her SDNY Complaint, plaintiff generally alleged that "defendants hired [her] as an Iron Worker, and assigned her to work at their construction site, located at Empire Outlets 55B Richmond Terrace, Staten Island, New York." (**Exhibit F** at Paragraph 24) However, in plaintiff's EEOC complaint, she specifically stated that "**CRC** hired [plaintiff] as an Iron Worker on or about July 26, 2016, and assigned her to work at its construction site located at Empire Outlets 55B Richmond Terrace, Staten Island, New York." (**Exhibit B** at Paragraph 1) Additionally, in plaintiff's SDNY Complaint, she alleged that "shortly after commencing her employment with Defendants, [she] was forced to endure blatant, open and egregious acts of sexual harassment in the workplace." (**Exhibit F** at paragraph 27) However, in her EEOC complaint, plaintiff alleged that "shortly after commencing her employment **at CRC**, [she] was forced to endure blatant, open, and egregious acts of sexual harassment..." (**Exhibit B** at Paragraph 4) Likewise, as to her claims of retaliation, in her EEOC complaint, plaintiff alleged that "CRC terminated [her] in retaliation for her complaints of unlawful sexual harassment and unsafe working conditions." (**Exhibit B** at Paragraph 11) Nevertheless, in her SDNY Complaint, in an attempt to set forth a *prima facie* claim of retaliation, plaintiff made the generalized allegation that "defendants terminated [her] in retaliation for her complaints of unlawful sexual harassment and unsafe working conditions." (**Exhibit F** at Paragraph 49) However, as set forth in plaintiff's EEOC complaint, plaintiff was not an employee of Ciminelli. Rather, she was an employee of CRC and it was CRC that terminated the plaintiff.

In light of the above, on or about June 14, 2017, Ciminelli moved to dismiss plaintiff's Complaint for failure to set forth a *prima facie* case of discrimination and/or retaliation as plaintiff

7

was not an employee of Ciminelli and the Complaint was devoid of a single allegation that anyone from Ciminelli engaged in sexually harassing conduct towards plaintiff. (**Exhibit G**)

On or about June 26, 2017, rather than opposing Ciminelli's motion, plaintiff filed an Amended Complaint in the U.S. District Court for the Southern District of New York (hereinafter the "Amended Complaint") alleging, among other things, that Ciminelli was plaintiff's employer under the "joint employer" doctrine. (**Exhibit A**) However, for the reasons set forth in detail below, Ciminelli was not a "joint employer," as Ciminelli did not have the authority to hire, fire, and/or discipline plaintiff. Additionally, even if Ciminelli were deemed to be a joint employer with CRC, Ciminelli did not know about the alleged discriminatory conduct by Sango, and upon learning of same did everything it could within its control.

## STANDARD OF REVIEW

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." Brown v Daikin Am. Inc., 756 F3d 219, 225 (2d Cir 2014) quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Indeed, "[i]n order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While it remains true that "a complaint in an employment discrimination lawsuit [need not] contain specific facts establishing [a *prima facie*] case of discrimination under the McDonnell Douglas framework," Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); see Twombly, 550 U.S. at 569-70 (plausibility standard not inconsistent with Swierkiewicz), the complaint must nevertheless, at a minimum, "meet the standard of

8

pleading set forth in Twombly and Iqbal." Hedges v. Town of Madison, 456 F. App'x 22, 23 (2d Cir. 2012) (summary order). Thus, plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570.

A complaint "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662 at 678 (2009). The standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s] devoid of further factual enhancement." Id. (alteration in original; internal quotations omitted). Riddle v. Citigroup, No. 13 CIV. 6833 AKH, 2014 WL 2767180, at 1 (S.D.N.Y. 2014).

Additionally, in assessing the legal sufficiency of a claim, the Court may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts or other public records, when deciding a motion to dismiss. See, e.g., Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006); Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). In that regard, "in deciding motions to dismiss in discrimination actions, courts regularly take notice of NYDHR filings and determinations relating to a plaintiff's claims." Macer v. Bertucci's Corp., 2013 U.S. Dist. LEXIS 170367 (E.D.N.Y. Dec. 3, 2013), citing Lindner v. Int'l Bus. Machs. Corp., 2008 U.S. Dist. LEXIS 47599, 2008 WL 2461934, at n.1 (S.D.N.Y. June 18, 2008) (taking judicial notice of NYDHR filings); Evans v. N.Y. Botanical Garden, 2002 U.S. Dist. LEXIS 16434, 2002 WL 31002814, at 4 (S.D.N.Y. Sept. 4, 2002). As such, Ciminelli respectfully requests this Court take judicial notice of plaintiff's charge filed with the EEOC and the Construction Management Agreement between Ciminelli and EOB when deciding the instant motion to dismiss.

As set forth more fully herein, taken together, the pleadings in this action and those documents filed with the EEOC, demonstrate, unequivocally, that plaintiff cannot prove any set of facts that would entitle her to relief and thus, the Amended Complaint should be dismissed.

## ARGUMENT

## POINT I

## PLAINTIFF FAILS TO STATE A CLAIM OF DISCRIMINATION OR RETALIATION AGAINST CIMINELLI UNDER ANY APPLICABLE LAW AND/OR STATUTE

### A. *No Employee-Employer Relationship Exists Between Plaintiff and Ciminelli*

It is black letter law that Title VII of the Civil Rights Act of 1964 protects individuals from "discriminatory employment practices." 42 U.S.C. § 2000e–2(a)(1); Lima v Addeco, 634 F Supp 2d 394, 399 (SDNY 2009), affd sub nom. Lima v Adecco and/or Platform Learning, Inc., 375 Fed Appx 54 (2d Cir 2010). Specifically, Title VII makes it unlawful for an "employer" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on account of sex. 42 U.S.C. § 2000e–2(a)(1). An employer also may not "discriminate against any of his [or her] employees ... because [the employee] has opposed any [unlawful employment] practice." 42 U.S.C. § 2000e–3(a). Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). An "employee," in turn, is "an individual employed by an employer." *Id.* § 2000e(f).

"The existence of an employer-employee relationship is a 'primary element' of Title VII claims." Shamilov v Human Resources Admin., 10 CIV. 8745 PKC, 2011 WL 6085550, at *5 (SDNY 2011) quoting Gulino v. New York State Educ. Dep't, 460 F.3d 361, 370 (2d Cir.2006); Harris v NYU Langone Med. Ctr., 12 CIV. 0454 RA JLC, 2013 WL 3487032, at *11 [SDNY 2013], report and recommendation adopted as mod, 12 CIV. 0454 RA, 2013 WL 5425336 (SDNY 2013); Sunnen v. New York, No. 10 Civ. 372(PKC), 2010 WL 3912728, at *1 (S.D.N.Y. 2010)

(holding that "Title VII is directed solely to unlawful discrimination in the employer-employee context"); see, e.g., Krasner v. Episcopal Diocese of Long Island, 374 F.Supp.2d 306 (EDNY 2005) (granting motion to dismiss Title VII discrimination claim where complaint failed to allege an "employee-employer relationship between the parties"). Significantly, "an employer-employee relationship is also required to sustain analogous claims under the NYSHRL and the NYCHRL. Harris v NYU Langone Med. Ctr., 12 CIV. 0454 RA JLC, 2013 WL 3487032, at *11 [SDNY 2013], report and recommendation adopted as mod, 12 CIV. 0454 RA, 2013 WL 5425336 (SDNY 2013).

Although the definition of "employer" has been construed liberally for Title VII purposes and does not require a direct employer/employee relationship, "the term is to be viewed functionally, to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment." Lima v Addeco, 634 F Supp 2d 394, 399 (SDNY 2009)(internal citations omitted). The "common-law element of control is the principal guidepost that should be followed when determining whether employment relationship exists." Gulino v. New York State Educ. Dep't, 460 F.3d 361, 370 (2d Cir.2006). For example, in Nelson v. Beechwood Org., No. 03 Civ. 4441(GEL), 2004 WL 2978278, at *3 (S.D.N.Y. Dec. 21, 2004) the court, in defining the term "employer," held that "under Title VII, an employer *compensates* and *controls* an employee's work."

Notably, the Courts in this Circuit have adopted two exceptions to the rule that employment discrimination may be maintained only against a plaintiff's direct employer. The "single employer" (or single integrated employer) and the "joint employer" doctrines. Lima v. Addeco, 634 F Supp 2d 394, 399 (SDNY 2009). "The joint employer doctrine applies when separate legal

11

entities have chosen to handle certain aspects of their employer-employee relationships jointly. Here, courts look at **commonality of hiring, firing, discipline, pay, insurance, records, and supervision** to determine whether an entity is a joint employer." Id. (emphasis added)(internal citations omitted); See also, Gore v RBA Group, Inc., 03-CV-9442 (KMK) JCF, 2008 WL 857530, at *3 (SDNY Mar. 31, 2008).

"An essential element under any determination of joint employer status in a subcontractor context is ... sufficient evidence of immediate control over the [individuals]. In determining immediate control, [the court] weigh[s] whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." AT&T v N.L.R.B., 67 F3d 446, 451 [2d Cir 1995], as clarified on reh (Sept. 29, 1995) *quoting* Clinton's Ditch Coop. Co. v. N.L.R.B., 778 F.2d 132, 138 (2d Cir.1985), *cert. denied* 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986). "Limited and routine supervision, without an ability to hire, fire, or discipline, cannot justify a finding of joint employer status." AT&T v N.L.R.B., 67 F3d 446, 452 (2d Cir 1995), as clarified on reh (Sept. 29, 1995).

Here, it is undisputed that plaintiff was never a direct employee of Ciminelli. Rather, as set forth in plaintiff's EEOC complaint, plaintiff was hired by CRC on or about July 26, 2016. (**Exhibit B**) Additionally, despite plaintiff's claims to the contrary, Ciminelli is not a "joint employer" with CRC as Ciminelli did not have the authority to hire, fire, and/or discipline plaintiff. Nor did Ciminelli have any authority and/or control over plaintiff's salary and/or compensation for the Project. To the contrary, as set forth in plaintiff's EEOC complaint, she was assigned by

CRC, to work at CRC's construction site, and was purportedly terminated by CRC in retaliation for her complaints of sexual harassment. (**Exhibit B**)

### B. *Even if Deemed a Joint Employer, Ciminelli Cannot Be Liable for Discriminatory Conduct*

Notwithstanding the above, "even where two companies are deemed a joint employer, it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII." Lima v Addeco, 634 F Supp 2d 394, 399 (SDNY 2009), affd sub nom. Lima v Adecco and/or Platform Learning, Inc., 375 Fed Appx 54 (2d Cir 2010). Indeed, even if a plaintiff establishes an entity's status as part of a joint employer, "the plaintiff must still show that the joint employer knew or should have known of the [discriminatory] conduct and failed to take corrective measures within its control." Watson v. Adecco Empl. Servs., Inc., 252 F.Supp.2d 1347, 1356–57 (M.D.Fla.2003)(holding that even if defendant, as the temporary employment agency that had placed plaintiffs as workers in a school cafeteria, were to be deemed a joint employer, it could not be liable for the school's alleged discriminatory discharge of plaintiffs, because plaintiffs could not show defendant failed to take corrective measures within its control); See also, Neal v. Manpower Int'l., No. 00 Civ. 277(LAC), 2001 WL 1923127, at **9–10 (N.D.Fla. Sept. 17, 2001) (assuming temporary agency was plaintiff's joint employer but finding no basis for liability because agency was not responsible for tangible employment action against plaintiff); Caldwell v. ServiceMaster Corp., 966 F.Supp. 33, 46 (D.D.C.1997) (no basis for liability where plaintiff failed to provide sufficient notice to employment agency about discrimination by employee).

Here, Ciminelli was not plaintiff's direct employer, and even if Ciminelli is deemed a joint employer—which it is not—upon learning of the alleged sexual harassment, Ciminelli did everything within its power. More specifically, "on August 18th, 2016 at approximately 2:00pm,

13

Mr. Castellano approached Mr. Michael Ferris (Site Superintendent LP Ciminelli) to inform him that [plaintiff] was being sexually harassed." See Exhibit C to plaintiff's Amended Complaint, **Exhibit A**. This was the first time Ciminelli was made aware of plaintiff's allegations of sexual harassment and/or discrimination. "When prompted and asked why [plaintiff] hadn't informed anyone of the prior incidents, she claimed to have told Steven Cappocia (EOB) as well as Greg, Shop Steward for LaQuilla (a contractor on site that [plaintiff] does not work for)." See Exhibit C to plaintiff's Amended Complaint, **Exhibit A**. Instantly, upon learning of the alleged sexual harassment, Ciminelli decided to hold a meeting in the presence of plaintiff, her union representation/Local 46 Shop Stewart, James Lamb, as well as Mr. Castellano and Juned Qazi from EOB, and, "a meeting was immediately held where all aforementioned parties were present." See Exhibit C to plaintiff's Amended Complaint, **Exhibit A**. As a result of the meeting, "Mr. Castellano and James Lamb removed Mr. Sango from the job site." See Exhibit C to plaintiff's Amended Complaint, **Exhibit A**.

At the meeting, "[plaintiff] was asked if she would like to press charges against Mr. Sango...[but] she declined." See Exhibit C to plaintiff's Amended Complaint, **Exhibit A**. Following the meeting, "Mr. Castellano and Mr. Lamb removed Mr. Sango from the job site" and plaintiff resumed working. See Exhibit C to plaintiff's Amended Complaint, **Exhibit A**. Again, Ciminelli did not have the authority to hire, fire and/or discipline plaintiff or defendant Sango. As such, to the extent plaintiff alleges Sango returned to the job site and continued his employment on the project and/or that she was terminated in retaliation for her complaints of sexual harassment, Ciminelli did not have the authority to charge same. As a result, even assuming arguendo Ciminelli is deemed a joint employer, plaintiff's Amended Complaint alleging discrimination and retaliation

against Ciminelli should be dismissed in its entirety as Ciminelli took all corrective measures within its control.

## CONCLUSION

It is clear from plaintiff's own EEOC complaint, that there was no discrimination and/or retaliation of any kind by Ciminelli. Ciminelli was not plaintiff's employer, and cannot be deemed to be a "joint employer" with CRC as Ciminelli did not have the authority to hire, fire, and/or discipline plaintiff. Additionally, even if deemed a joint employer, upon learning of the purported discriminatory conduct by Sango, Ciminelli took all corrective measures within its control as Sango was also not an employee of Cimnellli. Accordingly, for the above-mentioned reasons, plaintiff's Amended Complaint against Ciminelli should be dismissed in its entirety.

Dated: White Plains, New York
 July 12, 2017

BABCHIK & YOUNG LLP

By: _____
Brittany A. Gold (BG 1731)
Attorneys for Defendant- L.P. Ciminelli, Inc.
245 Main Street, Suite 330
White Plains, New York 10601
(914) 470-0001