USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/7/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
MARLINE SALVAT,                                              :
                                                             :
                              Plaintiff,                     :
                                                             :   17-CV-4002 (VEC)
              -against-                                      :
                                                             :   OPINION AND ORDER
                                                             :
CONSTRUCTION RESOURCES CORP.,                                :
EMPIRE OUTLET BUILDERS, LLC,                                 :
L.P. CIMINELLI, INC., and ANTHONY SANGO,                     :
                                                             :
                              Defendants.                    :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiff Marline Salvat ("Salvat") alleges that she was sexually harassed by a co-worker at a construction site on Staten Island, New York. Salvat alleges that the corporate defendants failed to take reasonable steps to accommodate female employees at the jobsite and retaliated against her for complaining about the alleged harassment by terminating her employment. Defendant L.P. Ciminelli, Inc. ("LPC") was the construction manager for the project. LPC moves to dismiss on the grounds that LPC was not Salvat's "employer," a prerequisite to a Title VII claim, and that it took reasonable steps in response to Salvat's complaints. For the reasons that follow, LPC's motion to dismiss is DENIED.

## BACKGROUND

Salvat was hired as an ironworker by one or more of the defendants on July 26, 2016. Am. Compl. (Dkt. 22) ¶ 23. Defendant Empire Outlet Builders, LLC ("Empire") was the general contractor for the project. Am. Compl. ¶ 24. Empire hired defendant Construction Resources Corporation ("CRC") as its subcontractor and LPC as its construction manager. Am. Compl. ¶¶ 24, 25. According to the subcontracting agreement, attached to the Amended Complaint, "[a]ll work of [CRC's] employees/laborers [was to] be performed pursuant to the instructions of

[Empire's] jobsite supervisor/representative including [LPC], who shall inform [CRC's] foreman/lead man, on a daily basis, as to the location of the work and the tasks to be performed." Am. Compl. Ex. B ("Subcontractor Agmt.") § 6(a).

Salvat alleges that a co-worker named Anthony Sango ("Sango") began harassing her shortly after she started working at the jobsite. Am. Compl. ¶ 31. Salvat alleges that she reported Sango's sexually explicit comments to a shop steward and several co-workers. Am. Compl. ¶¶ 32-33. Approximately one week later, Sango followed Salvat to a porta-john at the jobsite and began banging on the door. Am. Compl. ¶¶ 36, 37. The lock on the porta-john was broken and Salvat was forced to brace herself against the door to prevent Sango from opening the porta-john while she was using the bathroom. Am. Compl. ¶ 36. Sango then pushed his phone through a broken vent above the door to the porta-john and took pictures of Salvat while she was on the toilet. Am. Compl. ¶ 37. According to Salvat, Sango attempted to blackmail her with these pictures. Am. Compl. ¶ 38.

Salvat reported the porta-john incident to the site's safety manager and Michael Ferris, an LPC supervisor. Am. Compl. ¶ 39. A meeting was called – allegedly by Ferris and the safety manager– at which the site supervisors promised to provide Salvat with a "safe and secure" bathroom facility and to terminate Sango's employment. Am. Compl. ¶ 49. According to Salvat, this was not the first time she had complained to management about the condition of the porta-john. Am. Compl. ¶¶ 41, 45. She had previously complained to management that there was no female-only bathroom at the jobsite, Am. Compl. ¶ 41, and complained about the broken lock and vents on the porta-john once it was provided for her use. Am. Compl. ¶¶ 41, 43, 45.

Site supervisors, including an LPC senior superintendent, met with Sango after speaking to Salvat. Am. Compl. ¶ 52. Sango was not terminated and continued to work at the jobsite. Am. Compl. ¶ 52. Salvat was fired shortly thereafter, allegedly for performance reasons. Am.

2

Compl. ¶ 53. Salvat contends that she was fired in retaliation for complaining about the inadequate and unsafe bathroom facilities at the jobsite and Sango's harassment. Am. Compl. ¶ 54. She brings claims for sexual harassment and a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; discrimination and retaliation under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107; and common law torts against Sango.

As noted above, LPC moves to dismiss on the grounds that it was not Salvat's "employer" and that it took all steps within its control to address Salvat's complaints.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In reviewing a Rule 12(b)(6) motion to dismiss, courts "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (quoting *Litwin v. Blackstone Grp., LP*, 634 F.3d 707, 715 (2d Cir. 2011)). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).

An employee-employer relationship is an element of each of Salvat's claims against LPC. The term "employer" is defined functionally, and includes "persons who are not employers in

conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment." *Laurin v. Pokoik*, No 02-CV-1938 (LMM), 2004 WL 513999, at *8-9 (S.D.N.Y. Mar. 15, 2004) (quoting *EEOC v. Sage Realty Corp.*, 507 F. Supp. 599, 611 (S.D.N.Y. 1981)) (additional citations omitted). Persons or entities who exercise control over an employee are potentially liable as "joint employers." In assessing whether a person or business is a joint employer, the Court applies a multi-factor test: "[i]n determining immediate control, we weigh whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *AT&T v. NLRB*, 67 F.3d 446, 451–52 (2d Cir. 1995) (quoting *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 138 (2d Cir. 1985)). Whether a person or business qualifies as a "joint employer" is fact-intensive and ordinarily not appropriately resolved at the pleading stage. *See Al-Kaysey v. L-3 Servs. Inc.*, No. 11-CV-6318 (RRM), 2013 WL 5447686, at *13 (E.D.N.Y. Sept. 27, 2013).

Salvat has adequately, albeit barely, alleged that LPC was her employer pursuant to the "joint employer" doctrine. According to the Amended Complaint and the Subcontractor Agreement attached thereto, LPC had the authority to supervise CRC and its employees, including Salvat: "[a]ll work of [CRC's] employees/laborers [was to] be performed pursuant to the instructions of [Empire's] jobsite supervisor/representative including [LPC], who shall inform [CRC's] foreman/lead man, on a daily basis, as to the location of the work and the tasks to be performed." Subcontractor Agmt § 6(a). Additionally, the Amended Complaint alleges that LPC's site superintendent, Mr. Ferris, called a meeting in response to Salvat's complaints, which resulted in an agreement to fire Sango and to fix the broken porta-john. Am. Compl. ¶¶ 39, 49; *see also* Am. Compl. Ex. C at 1 (Empire incident report describing meeting called by

4

Ferris).  Salvat also alleges that a more senior LPC superintendent, Randell Babbitt, was involved in a meeting with Sango.  Am. Compl. ¶¶ 51-52.  Mr. Ferris was further involved in a follow-up meeting with Salvat, her union, and CRC, and Empire's record of that meeting can be read to suggest that Salvat was an employee of both Empire and LPC.  Am. Compl. Ex. C at 2 (stating, in response to Salvat's complaint that "The [women's bathroom] must be secured with appropriate window vents and a functioning lock.  Mr. Stango [sic] must be removed from this job.  It is of the utmost importance to [Empire] and [LPC] that all their employees male and female are safe and secure in their work environment.").  These allegations are relevant to three of the joint-employer factors: LPC's control over hiring and firing (factor one), disciplinary procedures (factor two), and direct supervision of employees (factor four).

LPC's argument that it was not Salvat's employer is based on a premature attempt to dispute the factual allegations in the Amended Complaint.  Relying on Salvat's EEOC charge (which names LPC as a defendant), LPC argues that Salvat previously accused only CRC of failing to provide adequate bathroom facilities and retaliating against her.[1]  Mem. (Dkt. 40) at 12-13.  The EEOC charge is not so inconsistent with the Amended Complaint that the Court may disregard Salvat's allegations.  *Cf. Castagna v. Luceno*, No. 09-CV-9332 (CS), 2011 WL 1584593, at *9 (S.D.N.Y. Apr. 26, 2011) ("There is no requirement that a Plaintiff detail in her EEOC charge every fact on which she may later rely to prove her charge.  While Defendants may later argue that the omission of such [information] undermines [Plaintiff's] credibility, credibility issues are not resolved on motions to dismiss.") (internal citations omitted).  Giving

---

[1]  Although the EEOC charge was not attached to the Complaint, courts in this circuit have recognized that an EEOC charge is a public record which may be considered in connection with a motion to dismiss.  *McBride v. Routh*, 51 F. Supp. 2d 153, 155 (D. Conn. 1999) ("Plaintiff's EEOC and [state] charges may be considered either as matters referenced in the complaint or as public records subject to judicial notice.").  The EEOC charge is also referenced in Salvat's complaint.  *See* Am. Compl. ¶¶ 9-10.

5

Salvat the benefit of the doubt – as the Court must at this stage – the fact that she previously blamed only CRC does not mean that LPC had no involvement in the events described in the Amended Complaint. That Salvat named LPC in the EEOC charge suggests Salvat did not intend to hold CRC solely responsible.[2] Otherwise, LPC relies on the terms of its contract with Empire, which was not attached to the Amended Complaint or referenced in the Amended Complaint, and may not be considered by the Court in connection with a motion to dismiss.

The Court also rejects LPC's argument that LPC took all possible steps to address Salvat's complaints. LPC's argument is that because it did not employ Sango, it had no authority to remove him from the project (or separate him from Salvat). *See* Mem. at 13-14. Salvat alleges, however, that she complained about the inadequate bathroom facilities at the jobsite before Sango began harassing her and that Defendants (LPC included) failed to address the issue. *See* Am. Compl. ¶¶ 43-45. Moreover, the Court may infer from Mr. Ferris's participation in meetings with Salvat and her union representatives that he had at least some role in determining how to address the situation. Empire's follow-up incident report supports that inference. *See* Am. Compl. Ex. C at 2 ("The [women's bathroom] must be secured with appropriate window vents and a functioning lock. Mr. Stango [sic] must be removed from this job. It is of the utmost importance to [Empire] and [LPC] that all their employees male and female are safe and secure in their work environment.").

In sum, Salvat has plausibly alleged, but just barely, that LPC was her joint employer and that LPC failed to respond adequately to her complaints.

---

[2] The EEOC closed its investigation and issued a right-to-sue letter after Salvat filed this lawsuit. *See* Am. Compl. Ex. A (Dkt. 27).

## CONCLUSION

LPC's motion to dismiss is DENIED. The parties are directed to submit a proposed case management plan by **December 11, 2017**.

**SO ORDERED.**

Date: **December 7, 2017**  
**New York, New York**

*Valerie Caproni*
**VALERIE CAPRONI**
**United States District Judge**